UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JANNA SCHUDDE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DREAM GAMES TEKNOLOJİ ANONİM ŞİRKETİ, a foreign corporation,<br><br>Defendant. | Case No.  2:24-cv-1215<br><br>**COMPLAINT – CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Janna Schudde ("Plaintiff") brings this case, individually and on behalf of all others similarly situated, against Defendant Dream Games Teknoloji Anonim Şirketi ("Defendant") to enjoin and obtain redress for Defendant's operation of illegal gambling game and unfair competition. Plaintiff alleges as follows:

## NATURE OF ACTION

1. Defendant is the developer, publisher, owner, operator and proprietor of the game called "Royal Match."

2. Consumers play Royal Match on Apple iOS devices, Android devices and Amazon devices.

3. On information and belief, Royal Match launched in 2021.

4. Through Royal Match, Defendant offers a multitude of "match-3" or "tile-matching" games, meaning that the player must usually complete levels by matching three (or more) of the same type of object in a line.

5. There are five different objects for matching in Royal Match: Book, Crown, Leaf, Shield, and Gem.

6. Players clear objects from a game board in Royal Match by matching three or more of the same type of object in a row or column.

7. When a player makes a match, the objects are cleared from the game board and new objects drop from the top to fill the game board.

8. Players must complete a level in a certain number of moves.

9. Players who win a level in Royal Match are awarded virtual coins.

10. Coins in Royal Match can be used to purchase additional moves to continue playing a level once all of the players' moves for that level have been exhausted.

11. Coins in Royal Match can also be used to purchase additional lives to all players to continue playing levels.

12. If a player loses a level in Royal Match, the player loses a life.

Carter Arnett Bennett & Perez PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

13. When a player loses all of their lives and gold coins, they are unable to continue playing the games in Royal Match.

14. The type and sequence of objects that populate the game board in Royal Match materially determines the outcome of a level. Specifically, whether a player successfully wins or loses a level in Royal Match is materially determined by the type and sequence of objects that populate the game board initially and that populate the game board as the player clears objects.

15. The type and sequence of objects that populate the game board in Royal Match are determined by chance. Accordingly, the games offered in Royal Match are games of chance.

16. Royal Match provides a limited number of free lives and coins to players. After players inevitably lose their allotment of lives and coins to Royal Match's games of chance, Defendant attempts to sell players additional coins to continue playing. Without additional coins, players cannot play Royal Match's games of chance.

17. Freshly topped off with additional coins, players convert them to lives to continue playing the games of chance in Royal Match.

18. The coins won by players playing Defendant's games of chance are identical to the coins that Defendant sells. Thus, by wagering coins that consumers purchase, consumers have the chance to win additional coins that they would otherwise have to purchase. These coins extend players' privilege to continue playing the games of chance in Royal Match.

19. The Ninth Circuit in *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 785 (9th Cir. 2018) held that the mobile game Big Fish Casino "constitutes illegal gambling under Washington law." *Id.* The Court reached this conclusion, in part, on the basis that the virtual chips offered in Big Fish Casino were things of value because they extended the right of players to play the games in Big Fish Casino. Similarly, the gold coin in Royal Match are things of value.

20. In addition to providing games of chance wherein users can win or lose things of value, Defendant manipulates the probability of winning those games of chance to maximize the games' addictiveness.

8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

21.     Further, to maximize the amount of money each user spends in Royal Match, Defendant advertises coin bundles in Royal Match that Defendant misleadingly states are on sale for a limited time. In reality, the coin bundles are not truly discounted and the sale offers are not truly limited in time.

22.     On information and belief, Defendant profits from Royal Match.

23.     On information and belief, Defendant has received revenues in excess of $1 billion from United States consumers.

24.     By operating Royal Match, Defendant has violated Washington and other states' laws and illegally profited from tens of thousands of consumers. Accordingly, Plaintiff, on behalf of herself and a Class of similarly situated individuals, bring this lawsuit to recover their losses.

## PARTIES

25.     Plaintiff Janna Schudde is a natural person who is domiciled in the state of Washington.

26.     On information and belief, Dream Games Teknoloji Anonim Şirketi is headquartered in Istanbul, Turkey.

27.     On information and belief, the address for the corporate office of Dream Games Teknoloji Anonim Şirketi is Esentepe Mahallesi, Büyükdere Caddesi Maya Akar Center, B Blok No:102/106 Şişli, İstanbul, Turkey.

28.     On information and belief, Dream Games Teknoloji Anonim Şirketi has participated in the development, operation, and publishing of Royal Match, including activities related to the advertising of in-game items.

## JURISDICTION AND VENUE

29.     This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§1332(d)(2), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendant.

30.     This Court has personal jurisdiction over Dream Games Teknoloji Anonim Şirketi, because it conducts substantial business and directs its activities into this District, including activities

4

that form the basis for the claims here, and a substantial part of the acts and omissions complained of occurred in this District.

31.     Venue is proper in this District under 28 U.S.C. §1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

32.     In addition, venue is proper in this District under 28 U.S.C. §1391(b)(1) and §1391(b)(3), in that Defendant is subject to this Court's personal jurisdiction.

33.     Plaintiff alleges, upon information and belief, that Defendant conducts professional and commercial activities in Washington on a substantial, continuous, and systematic basis and therefore Defendant is subject to the general jurisdiction of the courts of this state.

34.     Plaintiff further alleges, upon information and belief, that the claims asserted in this complaint arise out of or are related to each of the Defendant's professional and commercial activities within Washington, and therefore the Defendant is subject to the specific jurisdiction of the courts of this state.

## **FACTUAL ALLEGATIONS**

35.     The proliferation of internet-connected mobile devices has led to the growth of what are known in the industry as "free-to-play" videogames. The term is a misnomer. It refers to a model by which the initial download of the game is free, but companies reap huge profits by selling thousands of "in-app" items that start at low prices but can quickly escalate to hundreds or even thousands of dollars.

36.     The in-app purchase model has become particularly attractive to developers of games of chance and games marketed towards children, because it allows them to generate huge profits. With games of chance that employ the in-game purchase strategy, developers exploit the same psychological triggers as casino operators. Just as with casino operators, mobile game developers rely on a small portion of their players to provide the majority of their profits. These "whales," as they're known in both the casino industry and the videogame industry, account for a small minority of players but provide the vast majority of revenue.

37.     Defendant is a mobile gaming company founded in 2019 with offices in Istanbul and London.

5

Carter Arnett Bennett & Perez PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

38.     In January 2022, Defendant reportedly reached a valuation of $2.75 billion.[1]

39.     In May 2024, Defendant surpassed $3 billion in player spending, with nearly all of its revenue coming from Royal Match.[2]

**Royal Match is an Unlawful Game of Chance**

40.     Users can download and play Royal Match in Apple and Android devices in the United States through the App Store and Play Store, respectively.

41.     The primary gameplay in Royal Match are match-3 puzzles where users are presented with various levels having specific goals for clearing objects in the puzzle within a certain number of moves:



42.     On information and belief, the placements of objects initially presented on the puzzle board are determined by chance.

---

[1] CNBC, *Turkish mobile gaming start-up defies economic turmoil to hit a $2.75 billion valuation*, https://www.cnbc.com/2022/01/18/turkish-mobile-gaming-startup-dream-games-raises-255-million.html (last visited July 24, 2024).

[2] PocketGamer.biz, *Dream Games surpasses $3 billion in player spending*, https://www.pocketgamer.biz/dream-games-have-just-passed-3-billion-in-user-spending/) (last visited July 24, 2024).

Class Action Complaint

Carter Arnett Bennett & Perez PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

43.     When a user matches three or more objects on the puzzle board, the objects clear from the board. The remaining objects drop down to fill the resulting empty spaces and new objects drop from the top of the puzzle board to fill the board.

44.     On information and belief, the type and sequence of objects that fill the game board in Royal Match after a player clears objects from the board are determined by chance.

45.     The type and sequence of objects that fill the game board as a player clears objects from the game board materially determine whether a player successfully completes the level within the required number of moves.

46.     "Lives" in Royal Match represent the number of attempts a player has to beat a level. If players have one or more lives, they can click on a level and play it. If players do not have any lives remaining, they cannot play the level.

47.     If a user is unable to complete a level within the required number of moves, the player must expend virtual gold to continue playing the level:



48.     If the player taps the red "x" button, the level is failed and a life will be lost.

49.     Coins can be used to refill lives in Royal Match.

50.     If a player runs out of lives and has insufficient coins to refill their lives, they must

7

purchase additional coins to continue playing:



51.     If a player successfully completes a level in Royal Match, he or she is awarded coins.

52.     Washington defines "gambling" as "staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome." RCW 9.46.0237.

53.     "Contest of chance" means "any contest, game, gaming scheme, or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." RCW 9.46.0225.

54.     While the games in Royal Match require user interaction, chance plays a predominant factor in the outcome of the games in Royal Match. Specifically, the objects that fall into the puzzle board (which is purportedly random – more on that below), play a material role in the outcome of the game, more so than the skill of the player.

55.     Washington defines "thing of value" to mean "any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge."

Class Action Complaint                                     Carter Arnett Bennett & Perez PLLC
                                                           8150 N Central Expy Suite 500
                                                           Dallas, Texas 75206
                                                           Tel: (214) 550-8185

56.     The lives and coins in Royal Match are things of value, because they provide an "extension of a service, entertainment or a privilege of playing a game or scheme without charge."

57.     The games in Royal Match have all the same trappings as casino games, such as slot machines, including graphics and sounds. Further, the games in Royal Match provide users with gameplay similar to spinning a slot machine where a user wins or loses based on the matching of certain objects in a row.

58.     Royal Match is distributed through companies headquartered in California, namely Apple Inc. and Google LLC. Moreover, players of Royal Match who make purchases within Royal Match process their purchases through Apple and Google. As a result of engaging in the conduct alleged in this Complaint, Defendant have also violated California and federal gambling laws, including California Penal Code §330a, California Penal Code §330b, California Penal Code §3301., *et seq*., California Penal Code §337j(a)(1), California Penal Code §337j(a)(2), The Illegal Gambling Business Act of 1970 (18 U.S.C. §1955), and The Unlawful Internet Gambling Enforcement Act of 2006 (31 U.S.C. §§5361-5367).

**Royal Match Manipulates Odds**

59.     In addition to providing unlawful games of chance, Royal Match furthers its harm by manipulating the odds of its games to increase their addictiveness and to induce users into spending money to purchase coins and in-game items.

60.     On information and belief, Royal Match manipulates the odds of its games to make certain levels nearly impossible to pass initially. On information and belief, Royal Match does so to induce users to deplete their lives and coins and increase the likelihood that they will spend money to extend their ability to play the game.

61.     On information and belief, after users fail to pass certain levels after repeated attempts, Royal Match will alter the odds of the type and sequence of game objects populating the game board to make levels easier to pass. On information and belief, Royal Match does so to increase the likelihood that users will continue to play Royal Match and not quit.

62.     By manipulating the probabilities regarding the type and sequence of game objects that

9

Carter Arnett Bennett & Perez PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

populate the gameboards in Royal Match to increase the addictiveness and monetization of Royal Match, Defendant engages in unfair competition.

**Royal Match Engages in False Advertising**

63.   To further manipulate users into spending money, Royal Match also falsely advertises sales.

64.   Royal Match presents users with is purported to be a limited time "sale" on in-game items. For example, as shown below, Royal Match presents users with a "sale" offer purporting to have a limited duration of availability (e.g. 4 days and 12 hours as shown below):



65.   Players viewing these advertisements reasonably understand it to mean that the offer is of a special value and will be available for only a limited duration.

66.   In reality, Royal Match offers the same or substantially similar such "sales" continuously or almost continuously.

67.   In so doing, Defendant further manipulates users into spending money in Royal Match by creating the false impression that users are receiving a unique value.

10

68.     Defendant's false and misleading advertisements, particularly in the context of addictive and unlawful games of chance whose odds are manipulated, further constitutes unfair competition.

69.     On information and belief, without Court intervention, Defendant will continue to publish mobile games that engage in unlawful gambling and unfair competition intended to induce consumers to make purchases.

**Plaintiff's Experience With Royal Match**

70.     In 2024, Plaintiff began playing Royal Match through her Apple device. After losing her initial allocation of free lives and coins, she began purchasing coins from Defendant for use in Royal Match.

71.     Overall, Plaintiff has wagered and lost over $900 at Royal Match's games of chance.

72.     Plaintiff viewed sales advertisements substantially similar to that depicted above and reasonably understood that the sale offers were of a unique value and would be available for only a limited time. She reasonably relied on this understanding in making one or more of her purchase decisions.

73.     As a result of Defendant's unfair, unlawful, and deceptive acts, Plaintiff and putative class members were induced into making in-game purchases they otherwise would not have made.

74.     As a result of Defendant's unfair, unlawful, and deceptive acts, Defendant was unjustly enriched.

75.     Plaintiff has an ongoing interest in playing Royal Match and therefore has an ongoing interest in its compliance with state and federal gambling laws and state unfair competition laws.

<u>**CLASS ACTION ALLEGATIONS**</u>

76.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of herself and the following proposed classes and sub-classes:

a)     **National Class**: All persons in the United States who played Royal Match and lost purchased lives and coins at Defendant's games of chance.

**b)**     **Washington Sub-Class:** All persons residing in the State of Washington who played Royal Match and lost purchased lives and coins at Defendant's games of chance.

11

Carter Arnett Bennett & Perez PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

77.     The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff reserves the right to define other exclusions from the Classes.

78.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence she would use to prove those elements in an individual action alleging the same claims.

79.     This action meets all applicable standards of Fed. R. Civ. P. 23 for class certification, in that Plaintiff can demonstrate the elements delineated below.

80.     **Numerosity**.  The members of the proposed Classes and Sub-Classes are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable.  See Fed. R. Civ. P. 23(a)(1).  While Plaintiff believes that there are thousands of members of each of the proposed Classes and Sub-Classes, the precise number of class members is unknown, but may be ascertained from Defendant's books and records and other third-party sources.

81.     On information and belief, Defendant maintains a list of users that includes personal information for the user including their email addresses or Apple or Google or other personal identifier, whether they have made in-app purchases, which in-app purchases they have made and when those purchases were made.

82.     **Ascertainability**. The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within its control or Plaintiff and the class members themselves.

83.     On information and belief, Defendant also has the ability to send notices to its users through the user interface of Royal Match.

Carter Arnett Bennett & Perez PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

84.     On information and belief, the Classes are also ascertainable through third-parties, such as Apple and Google, using business records, and other information kept by such third parties, in the usual course of business.

85.     Plaintiff anticipates providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

86.     **Commonality and Predominance**. This action involves common questions of law and fact, which predominate over any questions affecting individual class members. See Fed. R. Civ. P. 23(a)(2) and (b)(3). These include, without limitation:

a.  Whether the games in Royal Match are "gambling" as defined by RCW §9.46.0237;

b.  Whether Defendant is the proprietor for whose benefit the unlawful gambling games are played;

c.  Whether Defendant violated the Washington Consumer Protection Act, RCW §19.86.010, *et seq*.;

d.  Whether Defendant engaged in the conduct alleged in the Complaint;

e.  Whether Defendant violated statutes analogous to those alleged herein applicable;

f.  Whether Defendant designed, advertised, marketed, distributed, sold, or otherwise placed Royal Match into the stream of commerce in the United States and State of Washington;

g.  Whether and how Defendant manipulates the odds in the games offered in Royal Match;

h.  Whether Defendant's presentation of sales in Royal Match are misleading to a reasonable consumer;

i.  Whether Plaintiff and members of the Classes are entitled to damages due to Defendant's conduct as alleged in this Complaint, and if so, in what amounts;

j.  Whether Plaintiff and members of the Classes are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint; and

k.  Whether Defendant has been unjustly enriched.

87.     **Typicality**. Plaintiff's claims are typical of the putative class members' claims because, among other things, all such class members were comparably injured through Defendant's wrongful

13

conduct as described above.  See Fed. R. Civ. P. 23(a)(3).

88.      Defendant's creation, display and operation of Royal Match, its games and its misleading advertisement is uniform for Plaintiff and all members of the Classes.

89.      **Adequacy**. Plaintiff is an adequate proposed class representative because her interests do not conflict with the interests of the other members of the proposed Classes she seeks to represent; because she has retained counsel competent and experienced in complex class action litigation; and because she intends to prosecute this action vigorously. The interests of the proposed Classes will be fairly and adequately protected by Plaintiff and her counsel. See Fed. R. Civ. P. 23(a)(4).

90.      **Declaratory and Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the proposed Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the proposed Classes as a whole. See Fed. R. Civ. P. 23(b)(2). Defendant's wrongful conduct alleged herein is grounded in the creation and dissemination of Defendant's offerings in Royal Match, which are displayed and operate uniformly. Plaintiff's and the class members' injuries are real, immediate, and ongoing. Plaintiff and class members seek injunctive and declaratory relief from Defendants.

91.      **Superiority**. A class is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the proposed Classes to individually seek redress for Defendant's wrongful conduct.

92.      Applying the principles of equity or balance of equities, expecting an individual plaintiff who is at a disadvantage with limited resources and spending capacity, and with minimal negotiating power, if any, to litigate claims against Defendant, a corporation valued at over $1 billion that has immense resources, would be unfair. Class actions are a necessary and essential means to provide for public interest litigations with checks and balances to curtail deceptive practices by powerful private corporations, including Defendants.

93.     There is no special interest in class members individually controlling the prosecution of separate actions. And even if class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. See Fed. R. Civ. P. 23(b)(3).

### FIRST CLAIM FOR RELIEF

**Violation of Revised Code of Washington §4.24.070**

**(On behalf of the Washington Sub-Class)**

94.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

95.     Plaintiff, members of the Washington Sub-Class, and Defendant are all "persons" as defined by RCW § 9.46.0289.

96.     Washington's "Recovery of money lost at gambling" statute, RCW 4.24.070, provides that "all persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost."

97.     "Gambling," defined by RCW § 9.46.0237, "means staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence."

98.     Coins sold for use in Royal Match are "thing[s] of value" under RCW § 9.46.0285. Lives sold in exchange for coins in Royal Match are "thing[s] of value" under RCW §9.46.0285.

99.     The games in Royal Match are illegal gambling games because they are online games at which players wager things of value (lives) and by an element of chance (e.g., the type and sequence of game objects) are able to obtain additional entertainment and extend gameplay (by winning additional coins).

100.     Defendant is the proprietor for whose benefit Royal Match is played because it owns

15

Royal Match and operates it for Defendant's profit.

101.    Plaintiff and the Washington Sub-Class gambled when they purchased coins to obtain more lives to wager in Royal Match's match-3 games. Plaintiff and each member of the Washington Sub-Class staked money, in the form of coins and lives purchased with money, at Defendant's games of chance for the chance of winning additional things of value (e.g., coins that extend gameplay without additional charge).

102.    In addition, Royal Match and the games therein are not "pinball machine[s] or similar mechanical amusement device[s]" as contemplated by the statute because:

       a. the games are electronic rather than mechanical;

       b. the games confer replays but they are recorded and can be redeemed on separate occasions (i.e., they are not "immediate and unrecorded"); and

       c. the games contain electronic mechanisms that vary the chance of winning free games or the number of free games which may be won (e.g., the games alter the odds of winning levels).

103.    RCW § 9.46.0285 states that a "'Thing of value,' as used in this chapter, means any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge."

104.    The "coins" Plaintiff and members of the Washington Sub-Class had the chance of winning in Royal Match are "thing[s] of value" under Washington law because they are credits that involve the extension of entertainment and a privilege of playing a game without charge.

105.    The "lives" Plaintiff and members of the Washington Sub-Class staked in Royal Match are "thing[s] of value" under Washington law because they are credits that involve the extension of entertainment and a privilege of playing a game without charge.

106.    The games in Royal Match are "Contest[s] of chance," as defined by RCW § 9.46.0225, because they are "contest[s], game[s], gaming scheme[s], or gaming device[s] in which the outcome[s]

16

depend[] in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." The games in Royal Match are programmed to have outcomes that are determined to a material degree upon chance, notwithstanding that skill of the players may also be a factor therein.

107.     In addition, Royal Match and the games therein are not "Amusement games" as defined by RCW § 9.46.0201 because:

        a.      The outcome does not depend in a material degree upon the skill of the contestant;

        b.      Merchandise is not the only prize awarded;

        c.      The outcome is in the control of the operator, Defendant.

108.     As a direct and proximate result of Defendant's gambling games, Plaintiff and each member of the Washington Sub-Class have lost money wagering at Defendant's games of chance. Plaintiff, on behalf of herself and the Washington Sub-Class, seek to recover all lost monies, interest, and reasonably attorneys' fees, expenses, and costs to the extent allowable.

<u>**SECOND CLAIM FOR RELIEF**</u>

**Violations of Washington Consumer Protection Act RCW Chapter 19.86**

**(On behalf of Plaintiff and the Washington Sub-Class)**

109.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

110.     Washington Consumer Protection Act RCW 19.86.020 states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

111.     Washington Consumer Protection Act RCW Chapter 19.86 entitles Plaintiff and members of the Washington Sub-Class to a private right of action for damages and equitable relief.  RCW 19.86.020; 19.86.090; 19.86.093.

112.     Defendant develops, markets and operates Royal Match throughout the United States, including Washington.

113.     "In a private action in which an unfair or deceptive act or practice is alleged under RCW 19.86.020, a claimant may establish that the act or practice is injurious to the public interest because it:

17

(1) Violates a statute that incorporates this chapter; (2) Violates a statute that contains a specific legislative declaration of public interest impact; or (3)(a) Injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons." RCW 19.86.093.

114.    Defendant violated RCW § 9.46.010, et seq. which declares that: "The public policy of the state of Washington on gambling is to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control. It is hereby declared to be the policy of the legislature, recognizing the close relationship between professional gambling and organized crime, to restrain all persons from seeking profit from professional gambling activities in this state; to restrain all persons from patronizing such professional gambling activities; to safeguard the public against the evils induced by common gamblers and common gambling houses engaged in professional gambling; and at the same time, both to preserve the freedom of the press and to avoid restricting participation by individuals in activities and social pastimes, which activities and social pastimes are more for amusement rather than for profit, do not maliciously affect the public, and do not breach the peace."

115.    Defendant has violated RCW § 9.46.010, et seq., because Royal Match offers illegal online gambling games.

116.    Defendant's wrongful conduct occurred in the conduct of trade or commerce, namely, while Defendant was engaged in the operation of making computer games available to the public.

117.    Defendant's acts and practices were and are injurious to the public interest because Defendant, in the course of its business, continuously advertised to and solicited the general public in Washington State and throughout the United States to play their unlawful online gambling games of chance. This was part of a pattern or generalized course of conduct on the part of Defendant, and many consumers have been adversely affected by Defendant's conduct and the public is at risk.

118.    Defendant also engaged in unfair or deceptive acts or practices through the manipulation of odds in Royal Match's games. Defendant violated the "unfair" prong of RCW 19.86.020 by manipulating the odds of the games of chance in Royal Match to increase their addictive qualities and to induce players to continue playing and spending more money.

18

119.    Defendant has also engaged in unfair or deceptive acts or practices through the sale of in-game items in Royal Match advertised using misleading limited-time sale offers. Defendant has violated the "unfair" prong of RCW 19.86.020 by falsely representing that sales in Royal Match contained unique, time-sensitive discounts, when, in fact, they contained the same in-game items as other packs not connected with specific sales events.

120.    Defendant has profited immensely from its operation of unlawful games of chance and related conduct, amassing billions of dollars from the losers of their games of chance.

121.    As a result of Defendant's conduct, Plaintiff and the class members were injured in their business or property—i.e., economic injury—in that they lost money wagering on Defendant's unlawful games of chance.

122.    Defendant's unfair or deceptive conduct proximately caused Plaintiff's and the class members' injuries because, but for the challenged conduct, Plaintiff and the class members would not have purchased items in Royal Match or lost money wagering at or on Defendant's games of chance, and they did so as a direct, foreseeable, and planned consequence of that conduct.

123.    Plaintiff, on her own behalf and on behalf of the Washington Sub-Class, seeks to recover actual damages and treble damages, together with the costs of suit, including reasonable attorneys' fees.

<u>**THIRD CLAIM FOR RELIEF**</u>

**Fraud**

**(By Plaintiff, individually and on behalf of the National Class and all sub-classes)**

124.    Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

125.    Defendant represented to Plaintiff and individuals similarly situated that various in-game purchases in Royal Match were on sale and that special limited time events or "sale" versions of in-game items were being offered at uniquely good values.

126.    These representations were false because the bundles were routinely offered in Royal Match and were not limited in time.

127.    Defendant designed the graphical images and verbiage on the advertisements in a way

19

Carter Arnett Bennett & Perez PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

that intentionally attracted Plaintiff and those similarly situated to the enticing but false claims regarding the existence of sales.

128.     Defendant knew that the sale advertisements were false and misleading at the time they were made.

129.     Defendant profited from these false representations to consumers.

130.     Plaintiff and those similarly situated reasonably relied upon the false statements in deciding to make in-game purchases.

131.     Upon purchasing the in-game items, Plaintiff and those similarly situated were harmed because, had they known the advertised sales were false, they would not have made those purchases.

132.     Plaintiff's and class members' reliance on Defendant's misrepresentations in its sale advertisements was a substantial factor in causing harm to Plaintiff and those similarly situated.

133.     Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff and those similarly situated and will continue to both damage and deceive Plaintiff and the class members unless enjoined by this Court.

**FOURTH CLAIM FOR RELIEF**

**Negligent Misrepresentation**

**(By Plaintiff, individually and on behalf of the National Class and all sub-classes)**

134.     Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

135.     Defendant represented to Plaintiff and individuals similarly situated that various in-game purchases in Royal Match were on sale and that special limited time events or "sale" versions of in-game items were being offered at uniquely good values.

136.     These representations were false because the bundles were routinely offered in Royal Match and were not limited in time.

137.     Defendant designed the graphical images and verbiage on the advertisements in a way that intentionally attracted Plaintiff and those similarly situated to the enticing but false claims regarding the existence of sales.

20

Carter Arnett Bennett & Perez PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

138.    Defendant knew or should have known that the sale advertisements were false and misleading at the time they were made.

139.    Defendant profited from these false representations to consumers.

140.    Plaintiff and those similarly situated reasonably relied upon the false statements in deciding to make in-game purchases.

141.    Upon purchasing the in-game items, Plaintiff and those similarly situated were harmed because, had they known the advertised sales were false, they would not have made those purchases.

142.    Plaintiff's and class members' reliance on Defendant's misrepresentations in its sale advertisements was a substantial factor in causing harm to Plaintiff and those similarly situated.

143.    Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff and those similarly situated and will continue to both damage and deceive Plaintiff and the class members unless enjoined by this Court.

## FIFTH CLAIM FOR RELIEF

### Unjust Enrichment

### (By Plaintiff, individually and on behalf of the National Class and all sub-classes)

144.    Plaintiff incorporates by reference all allegations in this Complaint and restate them as if fully set forth herein.

145.    Plaintiff and the Classes have conferred a benefit upon Defendant in the form of the money Defendant received from them for the purchase of coins in Royal Match.

146.    Defendant appreciates and/or has knowledge of the benefits conferred upon it by Plaintiff and the Class.

147.    Under principles of equity and good conscience, Defendant should not be permitted to retain the money obtained from Plaintiff and the members of the Classes, which Defendant has unjustly obtained as a result of its unlawful and deceptive practices in connection with Royal Match.

148.    As it stands, Defendant has retained millions of dollars in profits generated from Royal Match and should not be permitted to retain those ill-gotten profits.

149.    Accordingly, Plaintiff and the Classes seek full disgorgement and restitution of any

21

Carter Arnett Bennett & Perez PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

money Defendant has retained as a result of the unlawful and/or wrongful conduct alleged herein.

## SIXTH CLAIM FOR RELIEF

### Negligence

**(By Plaintiff, individually and on behalf of the National Class and all sub-classes)**

150.    Plaintiff incorporates by reference all allegations in this Complaint and restate them as if fully set forth herein.

151.    Defendant undertook a duty of care when it published and operated Royal Match in the United States.

152.    This duty, included, at a minimum, a responsibility not to allow players of Royal Match to engage in illegal behaviors, including gambling, that Defendant was actively facilitating.

153.    Defendant breached its duties to Plaintiff and members of the classes by permitting users to participate in illegal gambling in Royal Match.

154.    Defendant's breach of its duties caused harm to its users, including Plaintiff, who lost money participating in the illegal gambling scheme perpetrated by Defendant.

155.    As a result of this misconduct, Plaintiff and the class members have been injured and seek damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

Plaintiff, on behalf of herself and the proposed Classes and Sub-Classes, pray for relief and judgment against Defendant as follows:

A.    Certifying the Classes and/or Sub-Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representative of the Classes and/or Sub-Classes, and designating Plaintiff's counsel as class counsel;

B.    Awarding Plaintiff and the class members compensatory damages and actual damages to be determined by proof;

C.    Awarding Plaintiff and the class members appropriate relief, including actual and statutory damages;

D.    For punitive and treble damages;

22

Carter Arnett Bennett & Perez PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

E.      For civil penalties;

F.      For declaratory and equitable relief, including restitution and disgorgement;

G.      For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

H.      Awarding Plaintiff and the class members the costs of prosecuting this action, including expert witness fees;

I.      Awarding Plaintiff and the class members reasonable attorney's fees and costs as allowable by law;

J.      Awarding pre-judgment and post-judgment interest; and

K.      Granting any other relief as this Court may deem just and proper

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

DATED: August 8, 2024

/s/ Omer Salik
Omer Salik (WA Bar No. 60433)
osalik@carterarnett.com
Carter Arnett Bennett Perez, PLLC
8150 N. Central Expressway
Suite 500
Dallas, TX 75206
Tel: (214) 550-8183

*Attorneys for Plaintiff*

23