UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANNA SCHUDDE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DREAM GAMES TEKNOLOJİ ANONİM ŞİRKETİ, a foreign corporation,<br><br>Defendant. | Case No. C24-1215RSM<br><br>ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT |

This matter comes before the Court on Defendant Dream Games Teknoloji Anonim Şirketi's Motion to Dismiss the First Amended Complaint pursuant to Rules 12(b)(2), 12(b)(6), and 9(b). Dkt. #18. Plaintiff Janna Schudde opposes with two briefs after receiving leave of the Court to conduct jurisdictional discovery. Dkts. #24 and 41. The Court has determined that it can rule without oral argument.

The Amended Complaint alleges that Defendant is the developer, publisher, owner, operator, and proprietor of a game called "Royal Match." Dkt. #17 at 2. Defendant is a Turkish mobile gaming company with offices in Istanbul and London. *Id*. at 9. Consumers play Royal Match on Apple iOS devices, Android devices, and Amazon devices. Through Royal Match, Defendant offers several "match-3" or "tile-matching" games, where the player usually completes levels by matching three (or more) of the same type of object in a line. There is allegedly an element of chance in such games. "Coins" in Royal Match can be purchased to extend game play. *Id*. at 3. These and other facts form the basis for Plaintiff's claim that Defendant's game violates certain Washington State anti-gambling laws. The

ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT - 1

Amended Complaint states that this Court has personal jurisdiction over Dream Games Teknoloji Anonim Şirketi "because it conducts substantial business and directs its activities into this District, including activities that form the basis for the claims here, and a substantial part of the acts and omissions complained of occurred in this District." *Id*. at 5.  It goes on to allege that "[o]n information and belief, Defendant localizes Royal Match for each market where it is distributed, including the United States," and that "Defendant has sold millions of dollars of virtual items to thousands of Washington residents, most of which are repeat purchases by the same customers, by contracting with the customers to sell virtual coins and other goods in exchange for legal tender." *Id*. at 6.  Defendant allegedly "has the capability to determine where its customers are from, including whether purchases are being made from Washington." *Id*.   The Amended Complaint also alleges that Defendant contracted with Amazon, headquartered in this District, and uses Amazon Web Services for operating Royal Match.  The Amended Complaint includes several other references to contacts between Defendant and various businesses and individuals located in the United States. *See id*. at 7–8.

### A. Motion to Dismiss for lack of Personal Jurisdiction under 12(b)(2)

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154, (9th Cir. 2006) (citing *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003)). However, this demonstration requires that the plaintiff "make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (citing *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001) (internal citations omitted)). Moreover, for the purpose of this demonstration, the court resolves all disputed facts in favor of the plaintiff. *Id*.

ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT - 2

The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process. *Id.* Washington's general long-arm statute encompasses acts committed personally "or through an agent." RCW § 4.28.185. Jurisdiction can be established by general or specific jurisdiction. The Ninth Circuit relies on a three-prong test for analyzing a claim of specific personal jurisdiction: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof, or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802, (9th Cir. 2004) (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden of satisfying the first two prongs of the test. *Id.* If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)). "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id.* The reasonableness determination requires the consideration of several factors, including (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the

ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT - 3

sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000), holding modified by *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006).

For claims sounding in tort, like the claims here, courts most often employ a "purposeful direction" analysis. To analyze whether the tort was purposefully directed to the forum state, the Court looks to the "*Calder* effects" test, which "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (quoting *Yahoo! Inc.*, 433 F.3d at 1206).

The effects test is drawn from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). There, the Court found that a California Superior Court had specific personal jurisdiction over the National Enquirer, a Florida corporation with its principal place of business in Florida. The newspaper's reporter and editor also resided in Florida, but their allegedly libelous story was distributed in California, and was about a well-known actress who resided in California and was alleged to have injured her causing emotional distress and harming her reputation. *Id*. at 784-86. The Supreme Court reasoned that the defendants' intentional and allegedly tortious actions "were expressly aimed at California," that the defendants knew of the article's "potentially devastating impact" upon the actress, and that the "brunt of that injury would be felt [by the actress] in the State in which she lives and works." *Id*. at 789-90. Under those circumstances, the defendants "must 'reasonably

ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT - 4

anticipate being haled into court [in California]' to answer for the truth of the statements made in [their] article." *Id*. at 790 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The purposeful direction test requires that the defendant (1) commit an intentional act that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). This test does not require that the defendant be physically present in the forum state, as "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [the Supreme Court has] consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id*.

"An interactive platform 'expressly aims' its wrongful conduct toward a forum state when its contacts are its 'own choice' and not 'random, isolated, or fortuitous,' even if that platform cultivates a 'nationwide audience[] for commercial gain.'" *Briskin v. Shopify, Inc.*, 135 F.4th 739, 758 (9th Cir. 2025) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359, 141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021)); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011).

Plaintiff argues that "[u]nder *Briskin*, Defendant clearly expressly aimed its conduct at Washington when it executed millions of transactions with over a hundred thousand individuals it knew to be in Washington." Dkt. #41 at 5.

ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT - 5

      The Court agrees. Resolving all disputed facts in favor of the Plaintiff, the Court finds that her allegations connecting this Defendant with consumers in Washington State are sufficient to establish a prima facie showing of personal jurisdiction. Plaintiff's jurisdictional discovery has allowed her to sufficiently allege that Defendant has knowledge of users' locations at the time of in-game purchases via IP addresses. *See* Dkt. #42 ("Salik Supp. Decl."), ¶¶ 3 and 4; Exs. 2-3. IP addresses are sufficiently reliable to put Defendant on notice of user locations. *See Wilson v. Playtika, Ltd.*, 349 F.Supp.3d 1028, 1036 (W. D. Wash. 2018) ("it can be charged with actual or constructive knowledge of its user base because it is aware that individuals with Washington IP addresses have purchased virtual coins."). Plaintiff has sufficiently demonstrated that Defendant engages in millions of in-app transactions with Washingtonians via its agent Apple. *See* Dkt. #41 at 10. Plaintiff has also sufficiently demonstrated that Defendant "had control over whether Washingtonians would view Defendant's advertisements, as its ad partners allow geotargeting by state." *Id*. (citing Dkts. #25-8 through #25-11; Salik Supp. Decl., Exs. 4-6.).

      The Court agrees with Plaintiff that under *Briskin* Defendant can no longer argue that its Washington activities were not express aiming because those activities were equally directed to all states. *See* Dkt. #41 at 11 (citing 2025 WL 1154075, at *13).

      After considering the above factors, the Court finds that exercising jurisdiction over Defendant would be reasonable under the circumstances of this case, given the significant revenue Defendant has generated from Washington residents, Defendant's overall business model, and Washington State's interest in the legal issues at stake.

      Given all of the above, Defendant's motion to dismiss under Rule 12(b)(2) will be denied.

ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT - 6

### B. Motion to Dismiss for Failure to State a Claim under 12(b)(6)

Defendant moves to dismiss all of Plaintiff's claims. Plaintiff's First Claim is brought under RCW § 4.24.070 for recovery of money lost at gambling. That section provides:

> "All persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost."

RCW § 4.24.070.

Defendant argues that "Royal Match is a puzzle game, not a gambling game." Dkt. #18 at 22. Defendant states "Plaintiff did not stake or risk anything when she played Royal Match. She claims to have used coins to obtain lives which were then wagered to play the game." *Id.* (citing FAC ¶¶ 140-42.). Defendant goes on in this fashion. Defendant also argues that Plaintiff did not lose anything:

> Although Plaintiff alleges that she somehow "wagered" and "lost over $900 at Royal Match's games of chance" (FAC ¶ 112), she admits elsewhere that these coins actually were purchased and used "to continue playing[.]" FAC ¶¶ 70-73. Plaintiff did not "wager" $900, she spent $900 in exchange for playing a mobile game and receiving digital items, which she used in-game to enhance her gameplay.

*Id.* at 24.

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint "must contain sufficient factual matter, accepted as

ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT - 7

true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570.

Defendant repeatedly argues facts contrary to the allegations. The allegations of the Amended Complaint, taken as true, clearly demonstrate that Plaintiff staked things of value within Royal Match and lost money doing so. For example, Plaintiff pleads:

> Players of Royal Match stake or risk something of value when playing a level in Royal Match. Specifically, players stake or risk a life in Royal Match to play a level or coins to continue playing a level after they have exhausted their moves. The levels in Royal Match are a contest of chance. If a player wins the level in Royal Match, they retain the life they staked or risked and win additional coins, which can be converted into lives. If a player loses that game of chance, they lose the life and coins they staked or risked. This distinguishes Royal Match from traditional videogames, where a user expends a life or coin to play a game and that life or coin is lost irrespective of the outcome of the game. In Royal Match, users may keep their life and gain more things of value (coins), or lose their life/coins, depending on the outcome of Royal Match's games of chance.

Dkt. #17 at 12. The Amended Complaint states, "Royal Match is akin to real world casino games known as 'I-Slots' or interactive slots, which are recognized forms of gambling that allows players to influence the outcome through choices and gameplay." *Id*. at 13. Specific to the named Plaintiff, the Amended Complaint states:

> In 2024, Plaintiff began playing Royal Match through her Apple device after viewing one of Defendant's advertisements in Washington. Plaintiff downloaded Royal Match from her residence in Washington. After losing her initial allocation of free lives and

ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT - 8

> coins, she began purchasing lives and coins from Defendant for use in Royal Match….
>
> Overall, Plaintiff has wagered and lost over $900 at Royal Match's games of chance. She lost the lives and coins (which she converted to lives) she purchased from Defendant by wagering them in Royal Match's games of chance.

*Id*. at 18.

Defendant argues that its game is different than what is alleged. But the Court must accept all facts alleged in the complaint as true for purposes of this Motion and make all inferences in the light most favorable to the non-moving party. Defendants' arguments are best saved for summary judgment or even trial.

Defendant next argues that the Amended Complaint fails to plead a violation of the Washington Consumer Protection Act ("CPA"). "To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 37, 204 P.3d 885, 889 (2009). "A plaintiff need not show the act in question was intended to deceive, only that it had the capacity to deceive a substantial portion of the public." *Id*. at 894. The CPA is to be "liberally construed that its beneficial purposes may be served." RCW 19.86.920. "The first CPA element may be predicated on a per se violation of a statute or an unfair act or practice not regulated by statute but in violation of public interest." *Greenberg v. Amazon.com, Inc.*, 3 Wn.3d 434, 454 (2024). "If a defendant's act or practice is not per se unfair, then the plaintiff must show the conduct is unfair 'under a case-specific analysis of those terms.'" *Id*. "By broadly prohibiting 'unfair or deceptive acts or practices in the conduct of any trade or

ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT - 9

commerce,' the legislature intended to provide sufficient flexibility to reach unfair or deceptive conduct that inventively evades regulation." *Panag*, 166 Wn.2d at 49.

Plaintiff points out:

> In addition to violating Washington's gambling law (a per se violation under CPA), the FAC alleges that Defendant engages in unfair case-specific conduct by (1) manipulating the odds in [Royal Match], and (2) advertising purported time-limited sales that are not actually limited in time. As a threshold matter, Defendant's arguments primarily dispute whether it engages in the underlying conduct, which cannot be resolved on a motion to dismiss.

Dkt. #24 at 25. The Court agrees with Plaintiff. Accepting all facts alleged in the complaint as true for purposes of this Motion, and making all inferences in the light most favorable to the non-moving party, this claim is plausible and adequately pleaded.

Over a short couple of pages, Defendant moves to dismiss Plaintiff's remaining claims for fraud, negligent misrepresentation, unjust enrichment, and negligence, essentially arguing again that the facts are not what Plaintiff pleads them to be. *See* Dkt. #18 at 28–29. The Court has already explained that this kind of argument ignores the applicable legal standard for a Rule 12(b)(6) motion. Defendant's briefing on these claims is otherwise lacking. The strength of these claims can be tested at a later date.

C. Remaining Issues

Defendant moves to dismiss claims alleging fraud for a failure to state these claims with particularity as required by Rule 9(b). The Court has reviewed the Amended Complaint and finds that Plaintiff includes a screenshot and describes how she was deceived by allegedly false advertising within Royal Match offering a sale with a countdown timer, only for the same or similar sale to appear shortly thereafter. This allegedly happened in 2024. Considering the nature of Defendant's product, this satisfies Rule 9(b). *See Moore v. Mars Petcare US, Inc.*,

ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT - 10

966 F.3d 1007, 1019-20 (9th Cir. 2020) ("Plaintiffs' complaint satisfies the Rule 9(b) heightened pleading standard in alleging the basic premise of what is false or misleading about a statement, and why it is false."). The potential for never-ending sales advertising to violate Washington State law is something that is currently being litigated in many cases before this Court. Rule 9(b) is satisfied here.

Finally, the Court declines to review evidence external to the Amended Complaint or to take judicial notice of such. The Court will deny Defendant's Motion asking the Court to take judicial notice of (1) a website showing the Terms of Service ("Terms") for Royal Match, (2) two YouTube videos, (3) an Amazon Web Services webpage, (4) a webpage containing Apples' terms of service, and (4) an iPhone loaded with a version of Royal Match. The Court finds these exhibits irrelevant for the Court's reasoning above and inappropriate for review at this stage, generally agreeing with the arguments in Plaintiff's opposition brief. *See* Dkt. #26.

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that Defendant Dream Games Teknoloji Anonim Şirketi's Motion to Dismiss the First Amended Complaint pursuant to Rules 12(b)(2), 12(b)(6), and 9(b), Dkt. #18, is DENIED. Defendant's Request for Judicial Notice, Dkt. #20, is DENIED.

DATED this 10th day of November, 2025.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE